Good morning, Your Honours. May it please the Court, my name is Taranjit Vichar. I am appearing on behalf of Petitioner Mr. Khamroev, who is a citizen of Uzbekistan and he is present in the Court with his U.S. citizen wife. The issue is whether the BIA and the Immigration Judge committed error in denying the Petitioner's application for withholding of removal and convention against torture on the basis of adverse credibility. And also, did the Immigration Judge give the Petitioner proper notice and reasonable opportunity to provide corroborative evidence before denying his application? The principal basis for IJ's adverse credibility finding was Petitioner was inconsistent in getting documentary evidence from him. The principal basis for the adverse credibility determination were basically, it was three implausibilities that the Immigration Judge identified in your client's account of what happened to him? Yes. If you could address, you know, consider together, they seem to me to provide at least some basis for the Judge's findings. So maybe you can explain why you don't think any of them is adequate? Because Judge never gave my client proper notice. Hang on a second. Let's put aside the corroboration because I agree with you on corroboration. But I guess I read the Judge's decision as saying, even apart from the lack of corroboration, I'm saying just the story itself. Here are three things that I find highly implausible about it, which your client wasn't able adequately to explain. And the statute does seem to allow implausibilities to be a basis for finding someone not corroborated. So maybe you can just explain why you don't think those considered together are enough? Yeah, because, Your Honor, he asked his parents to provide those documents and they were afraid to send those documents. Because a country like Uzbekistan, it's not very easy to obtain those type of evidences from that country because the family was afraid to send those corroborating evidences. Could you just clarify the timing of when he, did he actually ask for those and what the timing was vis-a-vis when he left Uzbekistan? Your Honor, though it's not on the record, but after he applied for asylum, he said on the last week, but he never talked about the political issue. He would just talk to them, how are they doing? Because the family was afraid to send those documents and he also testified that there was a wiretapping of the phones. That's why the family was afraid. And though the Judge also said he was inconsistent and there was no evidence, and that's why... I guess we do in the United States, too, apparently, right? Yes. And that's why, as he was given opportunity to present those additional evidence, my client, especially petitioner, should be given opportunity to provide those additional documents. If he was serious about wanting to remain in the United States, why didn't he do something about it before his time ran out? He was way out of time on his application. That's correct, Your Honor. He testified he did not know that he can apply for asylum. Ignorance is an excuse. We'd be flooded with people who would have that excuse. So, Your Honor, that's why he did not fought the claim of asylum. He only applied for withholding of those documents. And that's why he did not fight the claim of asylum. And that's why he did not fight the claim of asylum. And that's why he did not fight the claim of asylum. Well, does his father still have his job and the faculty at the State University? At this moment, I am not aware of, Your Honor. Yes, at the time of the hearing, that time he was still professor in that university. So the family isn't being discriminated against as far as the record shows? Yes, Your Honor, because he had problems with security services. And this country is an authoritative country. All of his problems arose out of the student meetings at the house, what, four or five years ago? That's correct, Your Honor. And even his family was taken into custody, though his parents were not physically harmed, but they were taken into custody and also questioned. The family? Yes, his parents, in May 2005, I believe. His father didn't lose his job or anything? I don't think so, Your Honor. Well, if his story is true, he was very badly treated by the police. But the thing turns on credibility now, doesn't it? Pretty much that if his story is true, he wins. And if the prior of the fact didn't believe him, then we have the problem of it has to be clearly an erroneous finding. Yes, Your Honor, that's why we are saying because of the Z case, he should be given opportunity again so that, and chance, so that he could collect those evidences. And did you want to save your remaining time for rebuttal? That's correct, Your Honor. Can I ask one question before you sit down? You, I think it may be in your brief or somewhere mentioned something about he is now married to a U.S. citizen? Yes. What's the status of his? Yes, Your Honor, now he's married to a U.S. citizen and he has two U.S.C. children. That's why denial of his claim or removal will be very devastating for the family. No, I guess I was asking what's the status of his attempt to get an adjustment of status based on his marriage? Yes, Your Honor, we've, by the time wife became U.S. citizen, the BIA already dismissed his appeal. So we filed motion to reopen, Suez-Pente motion to reopen. And also we tried to work with district counsel's office. We filed joint motion. We request them to join the joint motion, which they denied. And also Suez-Pente motion to reopen was also denied. We filed adjustment of status in his case and I-130 is approved, but we could not go because the case was not reopened. We couldn't do anything. Wait just a second. The I-130 was approved? Approved, yes. I-130 was approved and because when the case was pending with the BIA, that time wife was permanent resident. And we could not file motion to reopen because he was not eligible to adjust. And the priority date was not current. I know, I just, what's today? What's the status of all that? Today, because they did not reopen the case, we filed adjustment of status. So he cannot get permanent residency into the United States to the wife until the case is reopened. Is there an appeal on the motion to reopen? Yes, he hired another attorney. No, we filed, he had hired another attorney from Michigan to appeal with the Ninth Circuit. And Ninth Circuit asked for the brief, which was not filed. But we filed with BIA. BIA just denied the motion. Well, but the BIA denied the motion. And is there an appeal from the BIA's denial of the motion to reopen? Yes. Is that pending where? No, Your Honor. It was filed with the Ninth Circuit. The Ninth Circuit asked for the brief. Yes. And he's a lawyer from Michigan, never filed a brief. Oh, I see. Yeah, that's what happened. So that appeal went out the window. Yes. All right. Thank you. Thank you, Your Honor. Good morning. May it please the court. Greg Mack for the Council for the Respondent of the Attorney General of the United States. The court asked the parties to be prepared to discuss the Z decision with respect to corporate cooperation, so I'll take that up first. Z is the law of the court. The court rejected the government's exhaustion of administrative remedies argument in the Z case. We acknowledge it is the law of the court. We disagree with it. The time for en banc and certiorari has not yet expired in that case, so the Attorney General is still reviewing whether to seek further review on that case. So we still believe that parties or, excuse me, applicants do have to exhaust their administrative remedies before the Board of Immigration Appeals, before they assert this lack of notice of cooperation argument. But Z is the law of the court. As the court is aware in our brief in this case, we have asserted the point that petitioner was on notice with respect to cooperation because the Department of Homeland Security in a pre-hearing notice, which I believe is at page 160 of the record, put the petitioner on notice that there's a complete lack of documentation in this case. So you can see that that's different from the immigration judge telling the person, look, you are about to lose your case unless you produce X or Y, right? Absolutely. It is not coming from the immigration judge in the Wren decision. It did state that is the duty of the immigration judge, but still, it's a fundamental point of administrative law that you put the tribunal on notice of whatever error exists in your case. And in this case, the petitioner was on notice from somebody. In this case, their opposing party that, look, there's no documentation in this case. And they got to this hearing before the immigration judge and didn't provide any cooperation, any corroborative documents. But I guess just if I'm in the petitioner's shoes and I hear my opponent say, hey, I'm going to challenge you on your lack of cooperation, I might say, okay, well, I'll see what I can find. On the other hand, if I show up at the hearing and the person who's going to decide my case tells me directly, you're going to lose unless you produce X or Y, I think I'm going to try a lot harder probably to get X or Y, right? So it seems to me the fact that the government filed this pre-hearing notice, it doesn't equate with the immigration judge saying this is the time to basically put up or shut up. And certainly, I'm not going to disagree with the court. Coming from the tribunal is one thing. Coming from the opponent is quite another thing. But still, the applicant here did not raise this issue before the board. So our point is that they fell to exhaust. But they were on notice. It takes care of that, right? We're bound by that. For now, anyway. For now, anyway, Your Honor. The other point that Z made that seems applicable here is the point that it would be ironic that if you have an individual seeking asylum, or in this case, other relief, and they can't get the information without putting somebody else at risk, then it's kind of ironic to force them to be able to get that information. And here we have the allegations about the parents and then also the friend. How does Z, I guess we say it, fit in to this situation? I think the statute says if the information is not reasonably available, which would cover the situation where, look, I don't want to put my family in harm's way in this foreign country. I think the statute covers that scenario saying, look, if it's not reasonably available, you don't have to provide that information. At least this court can reverse the immigration judge's board on that particular point. In this particular case, you have, I think it's pages 109 through 111, where the alien says, well, I did ask my family for documents. And then he gives this testimony that, wait a minute, no, I didn't ask them for documents. All we talked about on the phone was niceties about what was going on with them. But I didn't get into I need documents for my case back here in America. He says these two things that are completely inconsistent. At one point he says, I did talk to them about getting documents about the medical records from the hospital and also on the beatings. And then on the other hand, he says, well, I didn't want to ask them for documentation for fear of the surveillance that was going on, which the immigration judge found to be implausible. And with respect to these implausibilities, as the court is So on that point, I guess your argument is it doesn't really matter because that's a foundation for the credibility determination. Right. There's an inconsistency on this point of whether he did, in fact, ask his family for documentation. On one hand, he says he did ask them. And then he asserts this surveillance and fear issue for not asking them. And I believe, again, that's at 109 through 110 of the record. With respect to these implausibilities, as the court is aware, an immigration proceeding is not like any other civil judicial proceeding. There aren't two opposing parties. All that the immigration judge has is the applicant's story upon which to make a determination whether this alien is eligible for relief. And we look at this story here, and the immigration judge declined to give credit to this particular story. Because under this story, the government of Uzbekistan and its security services are so overwhelming, so malicious, and so physically abusive. Yet on the other hand, two years after his student group is kicked off of campus, the director, the president, the director of the university, gives him a good-standing certificate to allow him to get a student visa to depart Uzbekistan. The immigration judge could reasonably conclude under the statute, which provides the ability for the immigration judge to look at plausibility, to say, wait a minute, this story doesn't add up. It can't be squared with how abusive that this petitioner said that the Uzbekistan security services were, where he was being apparently detained and beaten every other day. His brother's being arrested, his family's being arrested, and yet two years after his student group is kicked off the campus, and literally within months of his February 5, 2005 arrest, he's allowed to get this good-standing certificate to depart the country. And apparently he's also, on page 198 of the record, he's on the security services list, according to the petitioner. To the immigration judge, this story just simply did not add up. And under the applicable standard of review, the court doesn't have to compel, the court isn't compelled to find the conclusion that the immigration judge should be reversed in this particular case. So when we add up all of these implausibilities, we think the court should deny the petitioner for review. And I take it you think we could do that wholly apart from this corroboration issue? That's correct, Your Honor. I think they're two distinct issues because now, under the Real ID Act amendments to the Immigration and Nationality Act, the immigration judge can rest on credibility or the immigration judge can rest on corroboration, even if the alien is credible, then the immigration judge can still rest on, can require corroboration. But whichever way the court goes on corroboration, you still have these implausibilities, which give the court the ability to deny the petition for review. Let me just make sure I understand what the immigration judge did here. Because I understand that you can do one of two things. You can say to the petitioner, look, I just don't believe your story, corroboration or not. I just find you not credible. Or you can say, you know, I'm really not sure. I'm kind of on the fence. And to believe you, I would need some corroboration. That's the scenario, yes. And so are you saying that the immigration did basically the former? The immigration judge did, I think, did it in steps. The immigration judge says, look, your story doesn't add up. And throughout the questioning of the alien, the immigration judge and I believe DHS attorney is saying, well, where's your documentation about the hospitalization? Where's your documentation about these arrests? And the petitioner is testifying, well, I don't have those, or I did ask for them, or I'm too afraid on behalf of my family. The immigration judge in the hearing took it in steps. His decision, I believe, is sequential in terms of first finding these implausibilities and inconsistencies, then moves to corroboration. And then the board on a de novo review looked at corroboration and the torture prevention claim on a de novo basis. So the board said, look, I'm going to look at whatever documentation is in the record, specifically I believe was the country report, and said on a de novo basis we're going to not deny CAT. But I think for this court's purposes, the court can simply look at the implausibilities and the inconsistencies and say we can deny the petition for review. Also, there's a claim with respect to humanitarian asylum in this case, in petitioner's case. But again, they failed to exhaust on the asylum claim, so they're denied humanitarian assistance. Thank the court. Thank you. Thank you. Your time is up, but we'll put a minute on the clock. Yes, Your Honor, regarding that issue that the university gave him a letter, actually the petitioner had a problem with the security services. And because the security services were arresting him or giving him a problem, that was creating chaos in the university. That's why the university threatened him that they will expel him so he can stop it. But it has nothing to do with the university at that time. And also, Your Honor, I just want to point out another thing. Judge also asked the petitioner why didn't he provide the medical record from the United States or medical evaluation from the United States. In that situation, judge failed to inquire more about that medical evaluation, how material is that medical evaluation for the claim. Because if that evidence is not material to the claim, that should not be the basis for adverse credibility. He might not have needed medical help at that point. Yes, after five years. After five years, judge never investigated whether he has or never inquired whether he still has scars or still has stitches on his body. If he didn't have that one, Your Honor, that medical evaluation was going to be immaterial for the case. Thank you. And I would request the court if his petition can be granted and case can be remanded or he can get more evidences, Your Honor. And also, he has a U.S. citizen wife. He can be able to adjust to her also. Thank you. The case of Kamaroff v. Holder is submitted. Thank you both for your argument this morning.
judges: GOODWIN, McKEOWN, WATFORD